John ERMAN and Cherie Erman; Donald Patchin and Sonya Patchin; Rosindo Salinas and Cora Salinas; and Richard Martini as successors in interest to Union Rebar, Inc., Plaintiffs,

v.

LOX EQUIPMENT COMPANY, a Delaware corporation (formerly Richmond Lox Equipment Company); Woodward–Clyde Consultants, a Nevada Corporation; and Richmond Tank Car Company d/b/a Richmond Industries, Defendants.

LOX EQUIPMENT COMPANY, a Delaware corporation (formerly Richmond Lox Equipment Company), Third–Party Plaintiffs,

v.

Lewis E. BALL, II and Richmond Tank Car Company, a Delaware corporation, Third–Party Defendants.

No. C 91–1257 BAC.

United States District Court, N.D. California.

July 1, 1992.

Matthew Righetti, Paul A. Montesanti, The Righetti Law Firm, Pleasanton, Cal., for plaintiffs.

Garrett E. Mulrooney, Gordon J. Apple, Jennifer A. Lew, Maun & Simon Law Firm, St. Paul, Minn., Robert Kavanaugh, Lillick & Charles, San Francisco, Cal., Donald J. Christie, Kirkendall & Collins, Houston, Tex., for defendant/third-party plaintiff Lox Equipment Co.

Anne M. Lawlor Goyette, Paul J. Sanner, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant Woodward–Clyde Consultants.

Gary Ewell, Ewell & Levy, San Francisco, Cal., for third-party defendant Lewis E. Ball, II.

F. Witcher McCullough, III, Mitchell A. Seider, Sheinfeld, Maley & Kay, P.C., Austin, Tex., Tamar Pachter, Farella, Braun & Martel, San Francisco, Cal., for third-party defendant Richmond Tank Car Co.

Gerald A. Cohn, Orinda, Cal., Special Master.

## ORDER DENYING MOTION TO DISMISS

CAULFIELD, District Judge.

This matter comes before the court on the motion of Defendant Richmond Tank Car Company ("RTC") to dismiss the second amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or, alternatively, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Oral argument was heard on June 19, 1992. After careful consideration of the parties' oral and written arguments and the record as a whole, the court hereby DENIES RTC's motion to dismiss.

### BACKGROUND

Plaintiffs are shareholders of Union Rebar, Inc., which was dissolved in 1989. Defendant RTC is a debtor-in-possession under Title 11 of the Bankruptcy Code, having filed its bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") on February 20, 1987. RTC is winding down its affairs pursuant to its First Amended Plan of Reorganization, which the Bankruptcy Court confirmed on February 23, 1990.

This case arises out of Union Rebar's purchase in April 1987 of a cryogenic manufacturing and repair facility in Livermore, California (the "Livermore Facility"). The Livermore Facility was purchased from Richmond Lox Equipment ("RLE"), which was then owned by RTC. On October 30, 1987, pursuant to an order of the Bankruptcy Court, RTC sold all of the stock, assets and liabilities of RLE to Minnesota Valley Engineering Company ("MVE"). MVE was sold to Worldwide Cryogenics Holding Corporation, Inc. in June 1989.

Plaintiffs filed this action on April 26, 1991. On March 6, 1992, plaintiffs filed their second amended complaint adding RTC as a defendant. Plaintiffs allege that RTC is liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for the environmental condition of the Livermore Facility and pray for damages in excess of $100,000.

### SUBJECT MATTER JURISDICTION

■ RTC argues that as of February 20, 1987, when RTC filed its bankruptcy petition, all of its property became subject to the exclusive jurisdiction of the District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1334(d). That exclusive jurisdiction was referred to the Bankruptcy Court under 28 U.S.C. § 157(a), and, RTC argues, continues until the bankruptcy case is closed.

The court need not determine whether RTC is theoretically correct. Even assuming the Bankruptcy Court would otherwise have exclusive jurisdiction, it has been relinquished in this case. When the Bankruptcy Judge signed the proposed Confirmation Order, she crossed out the "exclusive jurisdiction" language and specifically ordered that jurisdiction was to be concurrent. Accordingly, RTC's motion to dismiss for lack of jurisdiction is hereby DENIED.

### AUTOMATIC STAY

■ Alternatively, RTC moves that the second amended complaint be dismissed as to RTC for failure to state a claim. RTC argues that this action violates the automatic stay provisions of the Bankruptcy Code and therefore is void as to RTC. *See In re Schwartz*, 954 F.2d 569 (9th Cir.1992) (violations of the automatic stay are void, not voidable). The court disagrees.

■ Section 362(a)(1) of the Bankruptcy Code provides an automatic stay "applicable to all entities" of the following:

(1) the commencement or continuation ... of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....

11 U.S.C. § 362(a)(1).[1] Clearly, this action could not have been commenced against RTC prior to the filing of its bankruptcy petition in February of 1987, because the Livermore Facility was not sold to Union Rebar until two months later in April of 1987. Thus, the applicability of the automatic stay depends on whether the court finds that plaintiffs' CERCLA claim against RTC arose pre-petition.

Several courts have noted that "the policy of giving debtors a 'fresh start' ... may conflict with the policy of protecting and removing hazardous wastes from the environment." *Juniper Development Group v. Kahn (In re Hemingway Transport, Inc.)*, 73 B.R. 494, 499 (Bankr.D.Mass. 1987). Although the Supreme Court has not ruled on the precise issue of when a CERCLA cause of action arises for bankruptcy purposes, it has indicated that the two objectives should be reconciled, if possible. *Id.* (citing *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1984)).

In determining when plaintiffs' CERCLA claim arose for bankruptcy purposes, the court finds persuasive the reasoning set forth in *Juniper*. In that case, the court determined when the CERCLA claim arose for purposes of deciding whether the clean-up costs were administrative expenses under the Bankruptcy Code. The debtor transferred real property to a third party, Juniper, post-petition and the property was later determined to be contaminated. The court held that although the toxic wastes were dumped on the subject property pre-petition, the cause of action under CERCLA arose as to *Juniper* when the property containing the waste was transferred to Juniper.

The policy considerations found to be significant in *Juniper* are also integral to this decision. As noted in *Juniper*:

Not only is the Court moved by the concept of fairness emphasized by the Supreme Court and the First Circuit Court of Appeals, it is moved by its awareness that [other courts have] frowned on the notion of a debtor attempting to transfer its liability or potential for liability under state or federal environmental laws.

*Juniper* at 505. A debtor should not be allowed to circumvent CERCLA by virtue of a post-petition transfer of property, particularly where there are allegations that the debtor had knowledge of the environmental problems which it did not disclose to the purchaser. Accordingly, the court finds that plaintiffs claim against RTC arose post-petition when the Livermore Facility was transferred. Therefore, the automatic stay does not apply.

The Bankruptcy Appellate Panel's decision in *In re Jensen*, 127 B.R. 27 (Bankr. 9th Cir.1991) does not warrant a different result. The *Jensen* case held that the California Department of Health Services' claim for clean-up costs arose pre-petition, because the debtor's conduct giving rise to the claim, *i.e.*, the release of hazardous waste, occurred pre-petition. The court so held despite the fact that the clean-up costs themselves were incurred post-petition. Although both *Jensen* and the case at bar involve the pre-petition release of hazardous waste, *Jensen* involved a claim by a governmental agency, the California Department of Health Services, whereas this case involves a claim by a post-petition transferee of the contaminated property. Thus, the cases are factually distinguishable.

Moreover, *Jensen* is not necessarily inconsistent with *Juniper*. Indeed, the *Juniper* court noted that although the debtor may have incurred the potential for liability pre-petition, its liability to *Juniper* under Section 107(a)(2)(B) of CERCLA arose post-petition. Were the court to apply the *Jensen* analysis that the CERCLA claim arose

---

1. Contrary to RTC's assertion, Bankruptcy Code Section 362(a)(3), which stays "any action to obtain possession of property of the estate" does not apply. This action was instituted to liquidate a contingent claim, not to collect on a judgment or otherwise obtain possession of property of the estate. If plaintiffs are successful in obtaining a judgment against RTC, however, section 362(a)(3) may then be applicable. *See In re M. Frenville Co.*, 744 F.2d 332, 338 n. 11 (3rd Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985).

based upon the debtor's conduct, the relevant conduct in this case would be the post-petition transfer of the Livermore Facility.

CONCLUSION

For the above reasons, the court DENIES RTC's motion to dismiss in its entirety.

IT IS SO ORDERED.